# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

MICHAEL CASEY                                                    PLAINTIFF

V.                      NO. 4:18CV00679 KGB/PSH

ANDREW SAUL,
**Commissioner of Social Security Administration**[1]             DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Michael Casey, applied for disability insurance benefits and supplemental security income benefits on April 16, 2015, alleging a disability onset date of December 31, 2013. (Tr. at 15). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 28). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner. Mr. Casey has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

## II. The Commissioner's Decision:

The ALJ found that Mr. Casey had not engaged in substantial gainful activity since the amended alleged onset date of November 20, 2015. (Tr. at 18). At Step Two, the ALJ found that Mr. Casey has the following severe impairments: obstructive sleep apnea and personality disorder. *Id.*

After finding that Mr. Casey's impairment did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that Mr. Casey had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, except that he could perform work where: (1) the interpersonal contact is incidental to the work performed; (2) the complexity of tasks is learned and performed by rote, involves few variables, and requires little independent judgment; and (3) the supervision required is simple, direct, and concrete. (Tr. at 21). The RFC provides that Mr. Casey cannot deal with the general public. *Id.*

The ALJ determined that Mr. Casey was not capable of performing any past relevant work. (Tr. at 27). Relying upon the testimony of the Vocational Expert ("VE") at Step Five, the ALJ found that, based on Mr. Casey's age, education, work experience and RFC, jobs existed in the national economy which he could perform, specifically hospital cleaner and garment bagger. (Tr. at 28). Consequently, the ALJ found that Mr. Casey was not disabled. *Id.*

## III. Discussion:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a

conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Mr. Casey's Arguments on Appeal

Mr. Casey contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ did not fully consider his subjective complaints and that the RFC did not fully incorporate his limitations. For the following reasons, the Court agrees with Mr. Casey.

As Mr. Casey stated at the hearing, his sleep apnea and daytime somnolence are his worst problems. (Tr. at 40). Indeed, Mr. Casey lost two jobs for falling asleep at work. (Tr. at 49-51). Mr. Casey said that he falls asleep mid-sentence, and that he only gets about two hours of sleep per night. (Tr. at 44-45). While he does use his CPAP machine, which was prescribed, he ends up feeling suffocated at night, coughing up blood. (Tr. at 42-43).

Mr. Casey's doctor recommended a sleep specialist and a sleep study. (Tr. at 358-362). At intake for the sleep study, which was conducted in April 2015, Mr. Casey complained of loud

3

snoring, excessive daytime somnolence, daytime fatigue, wakefulness at night, and difficulty concentrating. (Tr. at 418). The sleep study confirmed that Mr. Casey had "very severe obstructive sleep apnea" and that he had failed CPAP therapy. (Tr. at 419).

Mr. Casey had two consultative examinations by the same psychologist, Ron Faupel, Psy.D. The first one was done on July 30, 2015. (Tr. at 505-509). Mr. Casey mumbled and could not understand the questions. (Tr. at 505). Mr. Casey actually fell asleep mid-examination and started snoring. (Tr. at 506). Mr. Casey said he could do virtually no activities of daily living and that his driver's license was suspended for falling asleep at the wheel. (Tr. at 507). Still, Dr. Faubel said that some of his responses were inconsistent and he may be malingering, so he could not properly ascertain Mr. Casey's functional abilities in a work setting. (Tr. at 507-509).

Dr. Faubel examined Mr. Casey again in November 2015, and at that time, he found that Mr. Casey would be significantly impaired in performing work tasks due to anxiety, poor concentration, and memory problems related to his sleep apnea. (Tr. at 512). Dr. Faubel did not think Mr. Casey was malingering. It is not clear from the ALJ's opinion what weight he assigned to the reports from Dr. Faubel, but clearly, Mr. Casey has significant limitations stemming from his sleep problems. The fact that Mr. Casey actually fell asleep and snored during the interview supports his own allegations. Likewise, falling asleep on the job and at the wheel lend credence to his claims.

Two state-agency doctors reviewed the records. (Tr. at 88, 106). The first found insufficient evidence to rate work functionality. The second doctor, Kay Cogbill, M.D., assigned an RFC for unskilled work, which the ALJ also prescribed. (Tr. at 88, 106). Dr. Cogbill did not mention the sleep study in her explanation and she gave little weight to the second opinion of Dr. Faubel. (Tr.

4

at 105-106). Dr. Cogbill determined that Mr. Casey's complaints were not credible because he had not been to mental health treatment and did not take psychotropic medications. *Id*. The remedy for severe sleep apnea is certainly not exclusively mental health treatment; rather, a CPAP is the most prevalent solution, and Mr. Casey failed CPAP treatment because his problem was so severe.

Mr. Casey takes issue with the RFC in this case. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The RFC contained some restrictions on mental functions at work, but it did not make exceptions for the daytime somnolence that is clearly an ongoing problem for Mr. Casey.[2] The Court finds that the RFC which the ALJ chose to use did not fully incorporate limitations arising from sleep apnea and daytime somnolence.

IV. **Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in his RFC determination.

---

[2] The ALJ and Mr. Casey's attorney both asked the VE whether jobs would be available for someone who needed frequent naps during the day, and the response was "no." (Tr. at 55).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 26th day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE